The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Good morning. Welcome to the Fourth Circuit. Please be seated. Good morning, Judge Keenan. Good morning, Judge Aitchi. Judge Rushing. We'll hear our first case, West Virginia Highlands Conservancy v. ERP Environmental Fund. Mr. Hunter. Thank you, Judge. May it please the Court, my name is Chris Hunter. I'm here on behalf of Appellant Doss Special Receiver, LLC. Before I launch into my argument, I'm just going to highlight a few important facts that I think help frame the issue. The receiver was appointed to manage the affairs of a now defunct coal company, ERP, in March of 2020 by the West Virginia Department of Environmental Protection. In particular, the receiver was approached because ERP came to lack the wherewithal to complete the obligations under the federal and state surface mining laws. And it had approximately 100 permits across multiple states, mostly in West Virginia. When the receiver was approached, ERP had about $9,000 cash in hand against in excess of $100 million in reclamation liabilities. So how many of the, I don't know if this is on record, how many of those permits were covered permits under this agreement? Well, what I was referring to as surface mining permits, the covered permits are water pollution control permits or NPDES permits, National Pollution Discharge Elimination System permits. So they control the discharge of water from these surface mining permits. And that's an important part of the argument, Judge, because the agreement only applies to facilities, which applies to covered permits. You have to have a covered permit to be a facility. That's correct, Your Honor. So the bottom line of what we're doing here is really trying to read the contract. This is a contract dispute, Your Honor. Yes, it is. It's a NOVA review of a contract dispute. So the receiver, through his resourcefulness, was able to manage an agreement with the bonding company to fund reclamation. He sold the majority of ERP's assets to further fund reclamation. He's been performing reclamation for the last four years at these permits. He has reduced the reclamation liability by tens of millions of dollars. Now, as part of the receiver's efforts towards performing reclamation, the issue that came to a head in this case is there was a proposal by a third party to come into what's referred to in the briefs as the Chestnut Oak Surface Mine. This was a mine, approximately 260 acres, that had been previously mined by ERP affiliates and partially left in an unreclaimed state. So you have thousands of feet of exposed high wall, which is essentially a vertical rock cliff face that presents a risk to the public health and safety. And so the receiver had worked out this arrangement where the third party was going to take transfer of this surface mining permit. It was going to mine the coal and complete reclamation across the entire permit. And the second aspect of the agreement was that there was going to be a royalty, pursuant to a sublease agreement, where the receiver would receive more money to take that and go perform more reclamation at other sites that needed to be reclaimed. So this is a deal that seemed like a win-win scenario, but it drew opposition from Appalese, who claimed that this agreement... That is one of many arguments, Your Honor, and I'll cut right to the chase. The paragraph that is at issue here, where this whole argument should start and end, is paragraph 63. That's what they say is violated by this agreement. And if you look at paragraph 63, paragraph 63, by its express terms, only limits mining by ERP, substituted defendant, and its affiliated companies. And so the first thing I think when we go through paragraph 63 that you have to note, and as appellants point out in their brief, is it says, notwithstanding any other provision of the second modified consent decree, substituted defendant and its affiliated companies shall not conduct surface mining at any location formerly owned or operated by Patriot co-corporation. So the plain language there is applied to substituted defendant, which was ERP, and its affiliates. It doesn't say anything about transferees or successors and or assigns. And so, you know, to overcome this pretty clear language, appellees convinced the district court below that you have to interpret paragraph 63 through the lens of paragraph 24 and this general boilerplate successors and assigns language. And that's wrong for at least two reasons. And the first is that non-absentee clause there. It says that to the extent, essentially, it provides that to the extent there's a contradiction between the language and paragraph 63 and anything else in the consent decree, we have to defer to paragraph 63. Paragraph 63 clearly applies the limitation on surface mining. Do we have to agree that successors and assigns would not be subject to paragraph 63 to rule in your favor? No, Your Honor. No, absolutely not. And the problem with the successors and assigns argument is that successors and assigns, as defined in Black's Law Dictionary and is generally understood by most courts, is a situation where for a stock purchase, consolidation, or merger, you become a successor and or assign. This is language that's boilerplate that's used. And we put a footnote in our briefs on virtually every consent decree, lots of contracts. It's not a situation where you simply purchase one piece of property or one asset. You don't become someone's successor and or assign by purchasing one discrete piece of property from them. And so going back to paragraph 63, which, again, I think controls this, you can't interpret paragraph 63 through the lens of paragraph 24 because there's an inherent conflict there. And that non-abstentee clause means that we have to defer to paragraph 63. The second problem with the district court's interpretation of paragraph 63 is there's a general principle of contract interpretation, and that's that the specific controls over the general. The specific language in paragraph 63 applies this limitation that we're talking about only to ERP and its affiliates. And there's this general boilerplate language about successors and or assigns all the way back in paragraph 24. So in elevating the general language above the specific portion of paragraph 63, we violated one of the basic principles of contract interpretation there. Now, certainly when negotiating the consent decree, appellees could have insisted on putting that language in paragraph 63. And, you know, who knows what would have happened, but they didn't. That language is not there, and they can't now use paragraph 24 to get something they cannot negotiate into paragraph 63. The next issue, I think, with the court's interpretation of the second modified consent decree is it's unnecessarily creating internal conflict with other provisions of the consent decree. And one of those examples that we used in our brief is paragraph 87. Paragraph 87 explicitly states that no provision of the consent decree creates any encumbrance or servitude on any real property, nor term, limitation, or provision contained herein shall be construed to run with any real property. Now, plaintiffs claim in their briefing that this paragraph 63 and their interpretation of it, it creates a blanket prohibition and prohibits anybody who ever buys any property that was formerly owned by Patriot Coal, which is how ERP acquired it, from ever mining that property except in accordance with the restrictions of paragraph 63. That's a clear encumbrance on the property directly in contravention of the plain language of paragraph 87. You could not be more clear. So what's the impact of... Jocelyn, we don't have a time running. Oh, it's up there? Okay. Sorry, go right back. Go ahead. Now, if we talk about paragraph 24 and to your question... What about 25? 25, yes. The district court didn't use that. It did, and I think paragraph 25, appellees pointed the district court to paragraph 25 in case their paragraph 24 argument failed, and paragraph 25 actually supports our case. As we explained in our brief, the restrictions in paragraph 63 are specifically accepted in paragraph 25, and Judge Agee, as you referenced earlier, one of the main points is that paragraph 25 deals with facilities, and those are related to covered outfalls. The parties agree that the chestnut oak permit is not a facility. So right off the bat, it's excluded from the provisions of paragraph 25. But when you look at paragraph 25, it starts out, except for those restrictions on large-scale surface mining set forth in paragraphs 54 through 58 herein, the applicability and duration which shall be governed solely by the terms of section 8 and the restriction on surface mining set forth in paragraph 63. So when you look at that first sentence, it's saying that the scope and applicability of paragraphs 54 through 58 and 63 are governed solely by reference to section 8, a whole different section than we're in right now. And that makes sense in the context of that non-abstentee clause in paragraph 63. Paragraph 63 stands on its own, and to the extent anything else conflicts with it, you have to look at the language of paragraph 63. Okay, Mr. Hunter, if I could ask you a question, sir. I understand your argument about the more specific provisions of paragraph 63 and about the facility and selenium compliance for paragraph 25. But what do we do with paragraph 24? You seem to just flick it away, but we can't say it's meaningless. So what meaning does it have? Your Honor, paragraph 24 does serve to bind all successors and assigns to the provisions of the consent decree that aren't otherwise accepted. So if someone comes in and buys the stock of ERP or it merged with ERP, then it would succeed to ERP's obligations under the second modified consent decree. So it's absolutely not meaningless. It's a big win for the plaintiffs or appellees, I'm sorry, in this case. So I take it you would conclude that, based on paragraph 63, that whatever restrictions there are in 24 and 25 flow either through a facility or a corporate successor as opposed to a purchaser of an asset. Absolutely, Your Honor, and that's exactly what paragraph 25 says. Paragraph 25 was designed to talk about how the ERP, how it could get out from underneath these water treatment obligations and how, if it transferred a facility, how it could make sure that it's not obliged to those. And it talks specifically about getting someone to sign on and agree to be bound because the law holds that you can't be bound by a consent decree that you're not a party to. And so the way this would have worked is if someone would have come in and purchased one of these facilities without agreeing to be bound, then appellees would have still expected ERP to either treat this water or provide for some treatment of water. And there's a mechanism by which they can get someone to agree to be bound and then they're off the hook, but not the provisions of paragraph 63. That's the key. The provisions of paragraph 63 just stick with ERP and are specific to ERP. And that's a win for plaintiffs because ERP can't just transfer all these facilities because this doesn't encompass the entirety of their mine permit portfolio. They can't just transfer these and then go back to mining as normal. So ERP, even if it transferred all these facilities, would have been stuck with this restriction on surface mining. Now, in order to, I think, avoid the plain language of paragraph 25 and the clear thrust of paragraph 25, what the appellees did was they convinced the court that you have to look to the last sentence of paragraph 25. And the last sentence says that transferees are bound, but they don't highlight the last four words of paragraph 25, which is they are bound consistent with applicable law. Now, as explained in our brief, the only time applicable law would bind a transferee to the terms of consent decree is when the transferee is a successor to all the permit transfer's obligations, such as a purchaser and a stock sale. And so, because applicable law holds that non-parties cannot be bound to a contract or a consent decree they haven't signed on to, then applicable law would not apply in this instance. I would have thought that your argument might be that transferee in that sentence, all transferees, refers to the transferees mentioned earlier in the paragraph. It talks about transferors and proposed transferees of facilities and subsequent owners and operators of facilities. And it seemed natural to then read the last sentence as referring to transferees, subsequent owners and operators of facilities. It doesn't say that, but what's your thought on that? That's absolutely our argument to the extent we did not lay that out clearly enough in our briefs. That is a main part of our argument, that you're talking about facilities all through paragraph 25, and then if you get down to this last sentence and you say, well, in any event, every transferee of any permit is bound, well, that effectively renders the rest of paragraph 25 superfluous. I mean, the main thrust of paragraph 25 is it applies to facilities, and you can't just render it surplusage by throwing this last sentence in at the end. I see my time is almost up. I'd like to just say in summary, appellees here are seeking to enforce a deal that they wish they had made and not the deal they actually made. As written, the Second Modified Consent Decree applies only to ERP and its affiliates, not transferees. Thank you. All right. Thank you, Mr. Hunter. You've got some rebuttal time. Ms. Bauer, we'll hear from you. Good morning, Judge Agee. May it please the Court. My name is Elizabeth Bauer, and I'm here on behalf of the plaintiffs' appellees. The issue before the Court today is whether the district court properly interpreted its own consent decree to find that permit transferees, third-party permit transferees, were bound to the terms of the decree. The dispute arises from the receiver's efforts. How much deference, if any, are we supposed to give the district court? Is this a de novo review? Is that right? Your Honor, yes. Some people would say that we can read a contract as good as the district court. Others might disagree, but that's a – I guess I'm looking for what degree of credit we give to the district court's reading, particularly if we disagree with it. Yes, Your Honor. So this Court has long held that the district court is due deference to its interpretation of its own orders. In Homeport Rentals v. Rubin 957F2-126, this Court held, it is peculiarly within the province of the district court to determine the meaning of its own order. And this Court has established something akin to an abusive discretion standard in a long stream of cases cited in our briefs, where this Court holds that the district court's interpretation of its own consent decree, its own order, is due deference. And here, Judge Chambers' order is due quite a bit of deference. So what if we read the contract and think, well, he's just wrong? Again, it's akin to abusive discretion, but he is due some deference. And that must be taken into account. Whether you call it de novo or akin to abusive discretion, there's some deference owed. I thought last year we said it was de novo review of a consent decree like this in the same context, in a mining context. Yes, Your Honor. But this Court can rely on context and aids in construction, and this Court held so in U.S. v. Southern Coal Corporation, 64 F. 4th 509, which I believe is the case you're referring to. And aids in construction, this Court held so explicitly, but aids in construction could be that deference owed to the district court. And I believe the Sixth Circuit has held that a district court's own interpretation is considered an aid in construction when conducting de novo review. So this dispute arises from the receiver's efforts to circumvent certain restrictions on surface coal mining found within the decree using a third party to do so. But because the district court correctly interpreted paragraphs 24 and 25 to bind the proposed third party permit transferee,  paragraph 24 states explicitly that the provisions of the Second Modified Consent Decree apply to and are binding upon ERP and any of its successors or assigns. Here, the proposed permit transferee are both successors and assigns as those terms are defined. Why are they successors? So successors is not defined within the Second Modified Consent Decree itself. However, paragraph 27 tells us what to do. It tells us that all terms not defined shall have the meanings assigned to them in the Clean Water Act. So is successor defined? Successor is defined within the SMACRA regulations, both federal and West Virginia. Successor and interest is one whose rights are granted under a permit. Successor and interest, that's part of the opposing counsel's argument. There are two distinct legal terms here, successor and successor interest. So if I'm reading this correctly, successor and interest, I believe, is defined in the regulations, but successor is not. These two terms are used interchangeably here, and especially in this context, even within the regulations themselves. How are we to conclude that they're used interchangeably? Normally, we have a principle that says in the context of a legislative enactment or a regulatory enactment that the governing body uses terms and they have a meaning, and we're to take those words as they appear. So I'm not sure how the district court could justify saying successor and interest is a defined term. There's nothing in the regulations that says you read successor and interest and successor as in peri materia or the same. And there's nothing in the regulations that says wherever successor appears, it means successor and interest or vice versa. So it seems like something of a leap the district court could make. Successor is the broadest term to use, and it necessarily encompasses successor and interest. Even if this court doesn't want to look to this macro regulation, the regulatory definitions, the general term successor is broad enough to include the proposed permit transferees. As Black's Law Dictionary defines it, a successor is one who succeeds to the rights and responsibilities of another or a corporation that through amalgamation, consolidation, or other assumed interests is vested with the rights and the duties. Here, the proposed permit transferee is vested with those rights of the permit as well as other obligations, liabilities, and duties. This court, or excuse me, the receiver at JA 479 through 480 proposed to the receivership court a permit transfer agreement wherein it explained what exactly this transfer would entail, and it shows that the proposed transferee would assume all reclamation and regulatory compliance obligations as well as reclamation costs, water sampling, compliance, maintenance, and other liabilities and duties, and would release the receiver and ERP of those same liabilities. It necessarily assumes these rights and these duties beyond that of a mere transfer of an asset like a bulldozer  If this term, if successors and assigns, is not defined in the contract, and it's not defined in the statutes or regulations, then we're supposed to look to the plain meaning in this context, right? What does successors and assigns usually mean? What should it have meant to the parties in this context? And doesn't West Virginia law say that successors and assigns generally means a company that has succeeded to all or substantially all of the assets and liabilities of another company, and it doesn't refer to individual sales? Your Honor, if we're looking to the context and general usage of this term, we don't have to look any farther than the SMACRA regulations themselves. The SMACRA regulations for both federal and West Virginia explicitly govern the surface coal mining in West Virginia, which this consent decree is specifically about. That's back to the terms. I mean, you pointed us to paragraph 27, and it says, terms used in this decree can be defined either in the decree or in those regulations, but successor and interest is not a term used in this decree. So we're looking for the ordinary meaning. It doesn't seem like successors and assigns has a specialized coal meaning because it's not defined in those statutes or regulations or in the consent decree. So it's a doublet, isn't it? Successors and assigns is a legal doublet that kind of it means one thing as a unit. I disagree, Your Honor. The use of or in there is a disjunctive, and it necessarily means that the words it connects are to be given separate meanings, and the United States Supreme Court held as such in U.S. v. Wood 571 U.S. 31. And so we need to separate those two terms and define them individually. And to go back to your previous question, the United States Supreme Court further held that a successor does or didn't hold, in NLRB v. Burns International Security Services, 406 U.S. 272, the United States Supreme Court noted that a purchaser could purchase a part of its predecessor's assets and still be considered a successor. What do you think of the conflict that's created with paragraph 61 that says that the limitations on large scale, and I know we're talking about the other surface mining, that the limitations on large scale surface mining shall not transfer with the purchase of an asset other than stock? Your Honor, paragraph 61 does exempt transferees from restrictions on large scale surface mining. In paragraphs 54 through 58, large scale surface mining is a defined term within the consent decree, meaning any surface mining that requires a Clean Water Act section 404 permit. And generally that entails a valley fill, which are not necessary and incidental to reclamation, but it doesn't necessarily mean it has to be a valley fill. A 404 permit is also needed for stream crossings or sediment ponds. Does it conflict with the district court's reading of paragraph 25? Does paragraph 61 conflict with paragraph 25? Does it conflict with the district court's reading of paragraph 24 or paragraph 25 that would have put these large scale surface mining obligations on the purchaser of a permit? No, Your Honor, because the large scale surface mining, there may be incidences where that large scale surface mining could be necessary and incidental to reclamation. So there's no conflict there. And I don't see how there's a conflict in binding a proposed third party permit transferee to that either. And I'm not, I guess I follow Your Honor's question in that regard. Well, just the paragraph says that those obligations don't transfer to someone who purchases a permit. So it's not, you know, how onerous the obligations are. The paragraph says that obligation doesn't transfer. And your friend on the other side has said, well, under the district court's reasoning, the large scale mining and other surface mining obligations wouldn't necessarily transfer because of the court's reading of paragraph 24 and 25. Paragraph 25 is specifically about how ERP or the receiver can shed its compliance obligations by transfer.  Correct, it does. And it's specifically regarding capital F facilities, which were the facilities with permits that were at issue initially in this case. And this is not a facility, but that actually doesn't matter in this case because the final sentence of paragraph 25 states, in any event, all transferees... Why does that make sense? I mean, ordinarily in interpreting expressions where you have a paragraph that deals with a particular subject matter, we don't ordinarily say, well, within that paragraph itself, absent some clear language, that we're talking about a different subject than the rest of the paragraph. The final sentence is actually clarifying and underscoring what was established in paragraph 24. So paragraph 25 does specifically talk about how the receiver can shed its compliance obligations at these facilities. But in any event, all transferees are still bound to the terms of the consent decree. So it's making clear in case... The transferee is not a specific defined term. The facility is. So why wouldn't you read that transferee to be limited only to acquirers of the facility? Because the transferees are successors, as the term is defined in paragraph 24. So because paragraph 25 is specifically talking about how they can shed their compliance obligations by transfer, it's explaining that because of paragraph 24 here, these transferees are still bound, regardless of whether ERP has managed to shed its compliance, and regardless of whether the permit is for a facility. In any event, all transferees, all means all. And further, the receiver draws issue with the phrase consistent with applicable law at the end of that final statement. But how the receiver would have this court interpret that is actually backwards. A transferee is not only bound when it otherwise would be bound by applicable law. That phrase means that it's not a condition for binding. Rather, it means all transferees are bound unless the law prohibits it. And to this counsel's knowledge, there's no law that prohibits them from contracting in such a way. And the district court agreed when it stated in JA 519, so long as it accords with applicable law. And here it does. However, if this court needs some kind of affirmative law that says this is allowed, this court can look to federal rule of civil procedure 65D, which binds those enacted concert to an injunction. And as this court knows, consent decrees that regulate future conduct operate as injunctions. To address counsel's argument about paragraph 87, respectfully, that argument has been waived. The paragraph 87 was not raised or even mentioned below. And further, paragraph 87 was not raised or even mentioned in the receiver's opening brief. And this court has held that, therefore, it's not properly before the court for consideration. But even if it wasn't waived, paragraph 63, as the receiver noted, begins with this non-abstante clause, which shows that it was intended to control over all other earlier provisions. Paragraph 63 was added later in time. And that non-abstante clause, notwithstanding any other provision, includes paragraph 87. But further, the issue here, and paragraph 63 here, is attached to the permit for the Chestnut Oak surface mine. And a permit is not real property. And so, if anything, this paragraph 63 in this instance is running with the permit, not with the land. And whether paragraph 63 attaches to land and whether that somehow conflicts with paragraph 87 is a question for another day that the district court didn't address. And that is not before the court today. Are you saying it's not the covenant that runs with the land? I'm saying that that question is not properly before the court. There are certain factual and legal questions related to that that the district court has not addressed. And that are not within the facts before us today. In addition to successors, paragraph 24 also assigns to the terms of the Second Modified Consent Decree. And here, the proposed permit transferees are also assigned. Again, the term assigns is not defined within the Second Modified Consent Decree. But an assign is an entity to whom an assignment is made. And the term transfer, assignment, or sale is defined within this MACRA regulations as a change in permittee or a change in ownership and control over the rights granted in a permit. Here, there can be no question that this permit transfer is considered an assignment in that regard. And therefore, the permit transferees are assigned. And moreover, and perhaps this is something the receiver wants to address in his rebuttal, but the receiver does not really dispute that the third party permit transferee would be an assign. The transferee assumes the rights and liabilities and obligations over the permits and is therefore clearly a transfer of rights, a transferee of rights, and therefore an assign. Lastly, the receiver draws issue with the fact that paragraph 63 only states substituted, dependent, and affiliated companies and claims that paragraph 24 doesn't apply to this paragraph. However, that's definitely wrong. Paragraph 24, excuse me, paragraph 26 was drafted against this backdrop of paragraph 24. And in paragraph 63 and elsewhere throughout the entire Second Modified Consent Decree, the term substituted, dependent, and affiliated companies necessarily includes successors and assigns because of that language in paragraph 24. This is a drafting technique to avoid clunky and redundant language throughout the Consent Decree when clearly paragraph 24 informs the entire Consent Decree in that way. And so paragraph 24 clearly informs paragraph 63 and elsewhere in the Consent Decree where substituted, dependent, and affiliated companies is mentioned. That also includes successors and assigns. If there are no further questions of the Court, for the reasons just stated and stated in our brief, we respectfully ask that this Court affirm the District Court's order. Thank you. Thank you very much. Mr. Hunter, you have some rebuttal time. Thank you, Your Honor. First, I'll address the question, and I think the Court has it already, on standard of review. It's very clearly de novo as stated just a year ago in U.S. v. Southern Coal. I won't quote that, but this is just a pure contract interpretation question. And as Your Honor stated, you can review a contract just as well as the District Court can. There might be some deference owed, potentially. The District Court might disagree with you on that. Well, I won't say that to Judge Chambers' face. There might be some deference owed if there had been some facts about custom and usage or some other aids to construction. But this idea that laws are aids to owe deference to the District Court in reviewing I think is a little bit absurd. The surface mining rules and regulations are not aids in construction. Those are laws, and your review of a law is de novo. It was raised before the District Court, which the District Court dealt with in its opinion. Mr. Keenan, do you have a question? Yes, thank you. I apologize. Mr. Hunter, I didn't mean to interrupt your sentence. I thought you had concluded it. Could you point to us in the record where you made the argument that the language in paragraph 63 was more specific and for that reason controlled over the language in 24? I would have to dig it out of my brief, Your Honor. But I think in both our briefs we hammered it. You're saying you did make that argument to the District Court? I believe that we made the argument. I don't recall specifically where in the District Court, but we made the argument that the specific language controls as a general principle of contract interpretation, and we hammered on the fact that paragraph 63 applies only on its face to ERP and its affiliates. Okay, thank you. As I was saying, the District Court, and in an argument that was raised before the District Court regarding aid, was that there's a selenium settlement agreement that was attached to the consent decree that said the parties expressly their intent is not for any of this to transfer to third parties, and the District Court brushed that aside. So there was an aid to usage. That's something that maybe the District Court may have been entitled to deference on. But the idea that reading laws is something that the District Court gets deference to is just wrong. Next, there's this argument I want to address in my original argument about successor and interest, and I think the Court already has this. Successor and interest is a term of art. You can't start breaking it into its individual words and saying that each individual word, once broken apart from the term of art, has the exact same meaning. You can't equate successor with successor and interest just because they sound similar. It would be like equating an attorney with an attorney-in-fact or your mother with a mother-in-law. They're just different terms. Next, there is this conflict with Paragraph 61, and the idea that you can still perform large-scale surface mining, which is larger and more destructive than small-scale surface mining, subject to the provisions and consistent with Paragraph 63's restrictions, is just absurd. I did not address the argument regarding 65D. I think that's circular reasoning. The idea that you can hold someone independently liable, in this instance under 65D2, for undermining the purpose of the consent decree gets us back to, well, is the purpose of the consent decree to bind every permit transferee? So you have to find a violation of the Second Modified Consent Decree to find liability under 65D2. The issue was raised about us raising Paragraph 87, but from what I recall in their brief, it was the first time I saw the phrase, a blanket prohibition on any property that would be sold, mining any property that would be sold or transferred from ERP. And so I did not recall that being framed as a blanket prohibition before the district court on anything that would happen with land. And so I think it's this blanket prohibition argument that raises that question. The assigns argument, the idea that the assigns are separate from the successors, that wasn't raised before the district court. We do not agree that a transferee would be an assign. We explained in our brief that the term assign is used differently, and it's not defined, so we shouldn't be looking to the service mining rules. But even if it were, it's different. And to the extent assigns were— Got anything else for us, Mr. Hunter? Because your time is up. I apologize. Thank you, Your Honor. We would request reversal of the district court. Thank you. All right. Thank both counsel for their arguments. We're going to come down on Greek counsel and then move on to our next case.
judges: G. Steven Agee, Allison J. Rushing, Barbara Milano Keenan